IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD T. JOYCE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 06 C 4754 |
| | ) | |
| MORGAN STANLEY & CO., | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Morgan Stanley & Co., Incorporated's ("Morgan Stanley") motion to dismiss. For the reasons stated below, we grant the motion to dismiss.

### BACKGROUND

On December 12, 1999, 21st Century Telecom Group, Inc. ("21st Century") allegedly entered into a merger agreement ("Merger Agreement") whereby all of its common shares would be acquired by RCN Telecom Services of Illinois, Inc. ("RCN"). At the time of the merger, Plaintiff Edward T. Joyce ("Joyce") was allegedly Chairman of the Board for 21st Century. Plaintiff Glenn Milligan

1

("Milligan") was allegedly 21st Century's founder and at one time served as President and CEO and was a member of the Board of Directors at the time of the merger. In addition to Plaintiffs Joyce and Milligan, Plaintiffs MaryKay Joyce, Joyce Retirement Plans, Edward R. Joyce, Amy Joyce, Katherine Mary Joyce, Julie Joyce Sherlock, Ava Milligan, Joseph D Keenan III, Sally Keenan, Katharine Keenan, Joseph Keenan IV, Arthur Aufmann, and Aufmann Profit Sharing Trust (collectively referred to as "Plaintiffs") all owned or had options to buy certain percentages of 21st Century common stock as of December 12, 1999.

Plaintiffs allege that at the beginning of negotiations between RCN and 21st Century, RCN was represented by Morgan Stanley as its investment advisor and 21st Century was represented by its own management team. RCN allegedly then changed its investment advisor to Solomon Smith Barney, and, "[a]t the insistence of RCN," 21st Century engaged the services of Morgan Stanley "to assist in negotiating the terms of the Merger Agreement and to provide financial advice to 21st Century for the benefit of 21st Century and its stockholders." (Sec. Amend. Compl. Par. 2). Plaintiffs contend that Morgan Stanley's financial advice and assistance were also to ensure that the interests of 21st Century's stockholders were "sufficiently protected." (Sec. Amend. Compl. Par. 2). Plaintiffs allege that 21st Century believed that Morgan Stanley was "intimately aware of RCN's business," and would thus be able to effectively assist 21st Century with the negotiations of the Merger Agreement with RCN. (Sec. Amend. Compl. Par. 16). Plaintiffs further contend that Morgan Stanley

2

sent 21st Century a letter acknowledging the relationship ("Engagement Letter") to formalize the engagement.

Plaintiffs contend that Morgan Stanley later submitted a fairness opinion ("Fairness Opinion") to 21st Century's Board of Directors and that the Fairness Opinion was allegedly also submitted to 21st Century's shareholders with Morgan Stanley's consent, along with the proposed merger documents. Plaintiffs allege that Morgan Stanley's Fairness Opinion concluded that "the merger was fair to 21st Century shareholders." (Sec. Amend. Compl. Par. 21). Plaintiffs assert that Morgan Stanley attempted to negotiate price protections for 21st Century's stockholders because "Morgan Stanley knew it was important to protect 21st Century shareholders from the risk of owning RCN stock." (Sec. Amend. Compl. Par. 22). RCN allegedly refused to agree to any price protections. Plaintiffs allege that based on Morgan Stanley's advice, 21st Century entered into the Merger Agreement with RCN on December 12, 1999, and 21st Century's shareholders subsequently voted to approve the merger between 21st Century and RCN.

Plaintiffs contend that starting on December 12, 1999, 21st Century shareholders were at risk because at that point there was no market for 21st Century stock. On December 12, 1999, RCN common stock was allegedly selling for approximately $45 per share. However, on April 28, 2000, the effective date of the merger, RCN's stock price allegedly fell to $28.62 per share. Plaintiffs claim that over the next couple of months, the price of RCN's stock "dropped even more precipitously and then soon became worthless." (Sec. Amend. Compl. Par. 34).

Plaintiffs allege that Morgan Stanley knew that certain investment procedures were available to 21st Century and its shareholders that would have protected them from the risk of exchanging 21st Century common stock for RCN common stock, but that Morgan Stanley failed to advise shareholders of those procedures. Plaintiffs contend that such price protection mechanisms available to 21st Century and its shareholders was the purchase of a "put" for the period of December 12, 1999, to April 28, 2000, and then to purchase a "collar" or enter into a "prepaid forward" for the period of time after April 28, 2000. (Sec. Amend. Compl. Par. 27). Plaintiffs claim that Morgan Stanley did not advise Plaintiffs of available price protection mechanisms even though Morgan Stanley knew of the importance of price protection.

Plaintiffs further allege that Morgan Stanley "intentionally failed to give the advice" concerning price protection mechanisms available to 21st Century shareholders because the price of RCN stock could have been depressed by the implementation of the price protections. (Sec. Amend. Compl. Par. 29). Plaintiffs contend that Morgan Stanley, as a former client of RCN, "was motivated to support the price of RCN stock," and "its primary goal of the engagement was to protect RCN's interests – not 21st Century's." (Sec. Amend. Compl. Par. 29, 33). Plaintiffs claim that if Morgan Stanley had advised 21st Century and its shareholders of the available price protection mechanisms, Plaintiffs would have implemented one or more of the recommended hedging strategies. Plaintiffs allege that Morgan Stanley

intentionally failed to disclose price protection strategies available to 21ˢᵗ Century and its shareholders so that Morgan Stanley could protect its relationship with RCN.

On September 1, 2006, the instant action was removed from the Circuit Court of Cook County, Illinois to federal court in the Northern District Illinois. On October 18, 2006, Plaintiffs filed an amended complaint, which had attached as exhibits the Engagement Letter and the Fairness Opinion. On December 20, 2006, we granted Plaintiffs leave to file a second amended complaint in order for Plaintiffs to plead facts relating to when Plaintiffs first discovered that they were wrongfully injured. The second amended complaint includes a fraud claim against Morgan Stanley. Morgan Stanley moves for dismissal of the instant action pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party challenging subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*; *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)(stating that when

5

reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is in fact no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd.*, 322 F.3d at 946 (emphasis in original). For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also*

*Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail about the management committee's funding decisions, [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998). With the possible exception of the requirement of Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)"), under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"); *Dunkin' Donuts, Inc. v. Tejany & Tejany, Inc.*, 2006 WL 163019, at *1 (N.D. Ill. 2006)(citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002)); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002)). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *id.*, and the plaintiff cannot satisfy the federal pleading requirement merely "by attaching bare legal conclusions to narrated facts which fail to outline bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that

"[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

**DISCUSSION**

I. Standing

Morgan Stanley contends that Plaintiffs do not have standing to bring the instant action because Plaintiffs' claim for fraud is one that can only be brought as a derivative action on behalf of 21st Century. Pursuant to Illinois law, shareholders cannot bring a direct lawsuit arising out of injury to the corporation if the injury complained of was substantially caused to the corporation. *Mann v. Kemper Fin. Cos.*, 618 N.E.2d 317, 323 (Ill. App. Ct. 1992). In addition, "'[w]here there is no showing that [a] plaintiff . . . had been injured in any capacity other than in common with . . . fellow stockholders, the cause of action belongs to the corporation . . ., and a stockholder may not seek relief on his own behalf.'" *Weil v. Northwest Industries, Inc.*, 522 N.E.2d 172, 174 (Ill. App. Ct. 1988)(quoting *Zokoych v. Spalding*, 344 N.E.2d 805(Ill. 1976)). Under such corporate law principles, "a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation." *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1194 (7th Cir. 1985). However, those individuals with a "direct and personal interest in the cause" may still sue even if the corporation's rights are also implicated. *Id.* A personal cause of action is valid if it resulted in direct harm, not derivative harm, regardless of whether

the corporate cause of action and the personal cause of action result from the same wrongful acts. *Buschmann v. Professional Men's Assoc.*, 405 F.2d 659, 663 (7th Cir. 1969).

Plaintiffs argue that they were directly injured by Morgan Stanley's failures to disclose important information. However, Plaintiffs' allegations against Morgan Stanley are premised on the allegations that "Morgan Stanley intentionally failed to disclose facts" to 21st Century and not to Plaintiffs directly. (Sec. Amend. Compl. Par. 41). For example, Plaintiffs contend that "Morgan Stanley did not disclose to 21st Century that one of Morgan Stanley's goals was to protect RCN's interests. . . ." (Sec. Amend. Compl. Par. 18). Plaintiffs further allege that "Morgan Stanley also failed to disclose to 21st Century that Morgan Stanley would not provide advice it was hired to do if doing so would be detrimental to RCN's interests." (Sec. Amend. Compl. Par. 18). Plaintiffs also contend that Morgan Stanley should have advised 21st Century to "purchase 'puts' for the benefit of its shareholders, or engage in other similar strategies. . . ." (Sec. Amend. Compl. Par. 27). In addition, Plaintiffs assert that "Morgan Stanley did nothing further to advise 21st Century about the need for and availability of price protections for 21st Century's shareholders." (Sec. Amend. Compl. Par. 28). Plaintiffs' allegations are the type of harm that impact all shareholders, not Plaintiffs in a personal capacity, and Plaintiffs' injuries are indistinguishable from injuries suffered by all shareholders. Plaintiffs' fraud claim is, in fact, a textbook example of a derivative action. Plaintiffs' complaint alleges that Morgan Stanley, a third party, allegedly caused harm to 21st Century, a corporate

entity, which resulted in a diminution in the value of the shareholders' stock. Plaintiffs are unable to show that a separate and distinct injury occurred to them because they cannot claim any cognizable injury aside from the diminution in their stock value. Therefore, Plaintiffs' claims are derivative in nature.

Plaintiffs also argue that the instant action is a direct claim, not derivative, because "21st Century did not suffer any injury as a result of Morgan Stanley's failures to disclose" because "21st Century never owned RCN stock." (Ans. 8). However, Plaintiffs' fraud claim is based on the merger between 21st Century and RCN, the resulting stock exchange, and the resulting fall in stock price of RCN stock. As such, whether the derivative claims arise out of pre-merger activities, or the merger itself, the fraud claimed by Plaintiffs is substantially the same.

In addition, both the Engagement Letter and the Fairness Opinion expressly disclaim any intent to confer a benefit to 21st Century shareholders. The Engagement Letter, written to the President and CEO of 21st Century and signed by the CFO of 21st Century, states that Morgan Stanley was "an independent contractor with duties solely to 21st Century." (Ex. A at 2). The Engagement Letter also expressly states that Morgan Stanley "will provide [21st Century] with financial advice and assistance in connection with this transaction, including advice and assistance with respect to defining objectives, performing valuation analysis, and structuring, planning and negotiating the transaction." (Ex. A at 1). The Engagement Letter, which contemplates that a subsequent Fairness Letter to 21st Century would be forthcoming, expressly states that "[a]ny advice or opinions provided by Morgan Stanley may not

10

be disclosed or referred to publicly or to any third-party except in accordance with our prior written consent. . . ." (Ex. A at 1-2). In addition, the Fairness Opinion also contains language stating that "this opinion does not in any manner address the prices at which the RCN Common Stock will trade following announcement or consummation of the proposed merger, and Morgan Stanley expresses no opinion or recommendation as to how the holders of the 21st Century Common Stock should vote at the shareholders' meetings held in connection with the Merger." (Ex. B). Both the Engagement Letter and the Fairness Opinion demonstrate that Morgan Stanley's only fiduciary duty was to 21st Century. As such, Morgan Stanley's contractual obligations were to 21st Century, and Plaintiffs were not individually conferred with any benefits of the agreement between Morgan Stanley and 21st Century. Therefore, Plaintiffs may not complain of any injury done to them as a result of harm done to 21st Century and any such action by Plaintiffs is derivative in nature. Based on the analysis above, Plaintiffs do not have standing to bring the instant action and we grant the motion to dismiss.

## II. Pleading Standards

Morgan Stanley also argues that Plaintiffs have failed to state a cause of action for fraud in the second amended complaint. To establish a fraud claim, a plaintiff must allege: (1) that the defendant made a statement or omitted telling the defendant information; (2) that the statement or omission was material; (3) that the statement was untrue; (4) that the defendant knew the statement was untrue or was in culpable

ignorance of the statement's veracity; (5) that the defendant had the intent that plaintiff rely on the statement; (6) that plaintiff actually relied on the statement; and (7) the reliance resulted in damages to the plaintiff. *Small v. Sussman*, 713 N.E.2d 1216, 1221 (Ill. App. Ct. 1999). In addition to these elements, a plaintiff pleading fraud in federal court must satisfy the particularity requirements of Rule 9(b).

Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In regard to fraud claims, the purposes of Rule 9(b) are: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994); *see Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)(noting that the purpose of the particularity requirement is to force the plaintiff to make a thorough investigation of a claim of fraud before filing a complaint). There is an exception to the heightened pleading requirement under Rule 9(b) if the plaintiff was denied access to information about the fraud at the time the complaint was filed, in which case the "Rule 9(b) . . . requirement must be relaxed." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

The particularity requirement in Rule 9(b) does not require a plaintiff to plead with particularity the entire theory of the case, but rather, only those "circumstances" intrinsic to any fraud-based claim. *See Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993); *DiLeo v. Ernst & Young*, 901 F.2d 624,

12

627 (7th Cir. 1990)(holding that "states of mind may be pleaded generally, [but] the 'circumstances' must be pleaded in detail," and that "[t]his means the who, what, when, where, and how: the first paragraph of any newspaper story"); *see also United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). The Seventh Circuit has further indicated that such circumstances include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993)(quoting *Schiffels v. Kemper Financial Servs.*, 978 F.2d 344, 352 (7th Cir. 1992)).

A. Application of Claim to Rule 9(b)

Morgan Stanley asserts that Plaintiffs have failed to plead with the particularity required by Rule 9(b). Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Seventh Circuit has recently stated that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). As such, "[a] claim that 'sounds in fraud – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements." *Id*.

Plaintiffs assert that the claim is one for constructive fraud rather than fraud and, as such, that Plaintiffs are not required to plead with such particularity.

13

However, Plaintiffs allege in the second amended complaint that "Morgan Stanley also failed to disclose to 21st Century that Morgan Stanley would not provide the advice it was hired to provide if doing so would be detrimental to RCN's interests." (Sec. Amend. Compl. Par. 18). Plaintiffs further assert that "Morgan Stanley did not disclose to 21st Century that one of Morgan Stanley's primary goals was to protect RCN's interests in this transaction; i.e., that there was an actual conflict of interest." (Sec. Amend. Compl. Par. 19). Plaintiffs also contend that the Fairness Opinion "was not based on an independent investigation by Morgan Stanley and it failed to address serious risks associated with the transaction and ways to hedge those risks." (Sec. Amend. Compl. Par. 21). Finally, Plaintiffs allege that "Morgan Stanley intentionally failed to disclose," (Sec. Amend. Compl. Par. 41), the necessary facts pertaining to the merger and that if Morgan Stanley had given Plaintiffs the appropriate advice that "Plaintiffs would have implemented the recommended hedging strategy." (Sec. Amend. Compl. Par. 42). Thus, the factual allegations supporting Plaintiffs' claims sound of fraud by omission and, as such, the heightened pleading standards of Rule 9(b) apply.

### B. Fiduciary Duty

Morgan Stanley contends that Plaintiffs failed to plead that Morgan Stanley owed any duty of disclosure or fiduciary duty to Plaintiffs. An "omission or concealment of a material" fact" can only be the basis for a fraud claim "if accompanied by the intent to deceive under circumstances which create the

opportunity and duty to speak." *Washington Courte Condominium Ass'n v. Washington Golf-Corp.*, 643 N.E.2d 1999, 216 (Ill. App. Ct. 1994).

Plaintiffs contend that "Morgan Stanley owed 21st Century and Plaintiffs a duty of full and fair disclosure." (Sec. Amend. Compl. Par. 11). However, Morgan Stanley owed no such fiduciary duty to Plaintiffs. The Engagement Letter, written to the President and CEO of 21st Century and signed by the CFO of 21st Century, states that Morgan Stanley "will provide [21st Century] with financial advice and assistance in connection with this transaction, including advice and assistance with respect to defining objectives, performing valuation analysis, and structuring, planning and negotiating the transaction." (Ex. A). The Engagement Letter further expressly states that "[a]ny advice or opinions provided by Morgan Stanley may not be disclosed or referred to publicly or to any third-party except in accordance with our prior written consent. . . ." (Ex. A). In addition, the Fairness Opinion expressly states that "this opinion does not in any manner address the prices at which the RCN Common Stock will trade following announcement or consummation of the proposed merger, and Morgan Stanley expresses no opinion or recommendation as to how the holders of the 21st Century Common Stock should vote at the shareholders' meetings held in connection with the Merger." (Ex. B). Both the Engagement Letter and the Fairness Opinion demonstrate that Morgan Stanley's only fiduciary duty was to 21st Century and that Morgan Stanley did not owe a duty to shareholders of 21st Century since Morgan Stanley specifically disclaimed any fiduciary duties to the shareholders. *See, e.g., DeWitt County Public Bldg Com. v. County of DeWitt*, 469

15

N.E.2d 689, 700 (stating that "[a fiduciary] relationship . . . does not exist between a bank and a customer obtaining a loan commitment from that bank despite the customer's having done business with the bank for several years and relying on one of its officers"). Plaintiffs have failed to shown that they actively sought out Morgan Stanley to ask for any particular advice relating to the merger outside Plaintiffs' normal duties as officers of 21st Century or that Morgan Stanley accepted such responsibility. *See Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992)(stating that "[t]he dominant party must accept the responsibility, accept the trust of the other party before a court can find a fiduciary relationship"); *see Crichton v. Golden Rule Ins. Co.*, 832 N.E.2d 843, 854 (Ill. App. Ct. 2005)(finding that a fiduciary relationship did not exist that would have imposed a duty on the defendant to "seek out the plaintiffs and disclose material regarding information relating to" condominium transactions where plaintiff "neither sought nor received any advice" from the defendant regarding such transactions). Based on the express language of the engagement letter, as well as Plaintiffs' failure to plead with particularity that Morgan Stanley owed a fiduciary duty to Plaintiffs, the complaint fails to meet the heightened pleading standards of Rule 9(b). Therefore, even if Plaintiffs were found to have standing to bring the instant action, we would grant Morgan Stanley's motion to dismiss.

    C.  Constructive Fraud

Even if we were to find that Plaintiffs alleged a claim of constructive fraud, the instant action cannot stand. Constructive fraud is an act of omission that requires "neither actual dishonesty nor intent to deceive, being a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others." *Index Futures Group, Inc. v. Ross*, 557 N.E.2d 344, 349 (Ill. App. Ct. 1990). Under Illinois law, a necessary element of a claim of constructive fraud is the finding of a breach of fiduciary duty. *See Paskas v. Illini Federal Savings & Loan Assoc.*, 440 N.E.2d 194, 198 (Ill. App. Ct. 1982)(stating that "[c]onstructive fraud will be found in a breach of duty arising out of a fiduciary or confidential relationship"). Therefore, as stated above, Morgan Stanley does not owe a fiduciary duty to Plaintiffs and any claim for constructive fraud cannot stand. *See, e.g., Kohler v. Leslie Hindman, Inc.*, 1994 WL 233801 (N.D. Ill. May 20, 1994)(finding that claims fail for not properly alleging a breach of fiduciary duty).

III. Statute of Limitations

Morgan Stanley also argues that Plaintiffs' fraud claims are time-barred. Pursuant to Illinois law, except in limited instances, "actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all *civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action*

*accrued.*" 735 ILCS 5/13-205 (emphasis added). The parties agree that the statute of limitations on the instant action is five years. Morgan Stanley asserts that the statute of limitations started to accrue in April 2000, when Plaintiffs suffered losses in the value of their stock due to a decline in stock price from approximately $45 to $28.62. Plaintiffs contend that the statute of limitations did not begin to accrue until 2002, when Plaintiffs became aware of "hedging products, such as collars and prepaid forwards in around December 2002." (S. Amend. Compl. Par. 37).

Pursuant to the discovery rule, a cause of action accrues "when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994)(quoting *Knox College v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981)); *Parks v. Kownacki*, 737 N.E.2d 287, 294 (Ill. 2000)(quoting *Knox*, 430 N.E.2d 976). Under this standard, a plaintiff reasonably should know that an injury is wrongfully caused when the plaintiff "possess[ed] enough information about the injury to alert a reasonable person to the need for further inquiries to determine if the cause of the injury is actionable at law." *LaSalle National Bank v. Skidmore, Owings & Merrill*, 635 N.E.2d 564, 567 (1994). When the cause of the "injury could develop naturally, without any wrongful cause, knowledge of the injury does not immediately put the plaintiff on inquiry concerning a potential wrongful cause." *Lubin v. Jewish Children's Bureau of Chicago*, 765 N.E.2d 1138, 1141 (Ill. App. Ct. 2002)(citing *McIntyre v. Christ Hosp.*, 536 N.E.2d 882 (1989)). As such, "[t]he limitations period begins to run when the plaintiff becomes aware that the

cause of his problem stems from another's negligence and not from natural causes." *Saunders v. Klungboonkrong*, 501 N.E.2d 882, 885 (Ill. App. Ct. 1986).

Plaintiffs argue that the statute of limitations did not begin to run until December 2002 because they "did not begin to suspect that they may ha[d] suffered a wrongfully caused injury until they learned about the existence of hedging products that could have protected their investment in RCN stock." (Ans. 15). Plaintiffs' argument is misplaced. In April 2000, 21st Century received the Fairness Opinion, Plaintiffs received the RCN stock, and the price of the RCN stock subsequently declined from approximately $45 to $28.62. Once the price of the RCN stock began to decline, Plaintiffs "possess[ed] enough information about the injury to alert a reasonable person to the need for further inquiries to determine if the cause of the injury is actionable at law." *LaSalle National Bank*, 635 N.E.2d at 567. It was at this point in time, when Plaintiffs suffered substantial monetary losses due to the stock price decline, that Plaintiffs should have "investigate[d] and ask[ed] whether [they] ha[d] a cause of action, that is, whether [Morgan Stanley] committed an actionable wrong." *Pollock v. Hafner*, 439 N.E.2d 85, 87 (Ill. App. Ct. 1982). In fact, Plaintiffs admit that "former 21st Century shareholders . . . who had substantially more sophistication than [P]laintiffs . . . may have engaged in hedging transactions" and, as such, "did not suffer the injury" alleged in the second amended complaint. (Ans. 9 n.5). Simply because Plaintiffs claim that they were unsophisticated investors does not excuse Plaintiffs from their duty to investigate the cause of their alleged losses. Based on the above, Plaintiffs' claims are also time-barred.

Therefore, even if Plaintiffs' complaint had survived the motion to dismiss on the grounds stated earlier, we would grant Morgan Stanley's motion to dismiss to the extent that it relates to the statute of limitations.

## CONCLUSION

Based on the foregoing analysis, we grant the motion to dismiss.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 29, 2007